DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

KAREN BEAUSEY (CABN 155258)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6598
    FAX: (415) 436-7234
    Karen.Beausey@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. |
| Plaintiff, | |
| v. | **VERIFIED COMPLAINT FOR FORFEITURE IN REM** |
| VARIOUS FIREARMS, | |
| Defendant. | |

The United States of America, by its attorneys, DAVID L. ANDERSON, United States Attorney, and Karen Beausey, Assistant United States Attorney for the Northern District of California, brings this complaint and alleges as follows:

**NATURE OF THE ACTION**

1. This is a judicial forfeiture action, as authorized by Title 18, United States Code, Section 924(d)(1) and Title 21, United States Code, Section § 881(a)(6), involving the seizure and forfeiture to the use and benefit of the United States of America the following property:

    A:    One (1) Mossberg 464 rifle, caliber 30-30, bearing serial number LA072616;
    B:    One (1) Ruger 10/22 rifle, caliber 22, bearing serial number 0009-16738;
    C:    One (1) Mossberg 500C shotgun, caliber 12, bearing serial number U396256;

| | | |
|---|---|---|
| D: | One (1) Springfield Armory, Geneseo IL XDS pistol, caliber unknown, bearing serial number S3768206;[1] | |
| E: | One (1) Kimber Eclipse custom II pistol, caliber 10, bearing serial number KF44753; | |
| F: | One (1) Smith & Wesson M&P 9C pistol, caliber 9, bearing serial number HBA4965; | |
| G: | One (1) Smith & Wesson 622 pistol, caliber 22, bearing serial number TCW5780; | |
| H: | One (1) Smith & Wesson 627 V-Comp revolver, caliber 357, bearing serial number DDX0018; | |
| I: | One (1) Glock Inc. 17 pistol, caliber 9, bearing serial number KYB100; | |
| J: | 252 Rounds assorted caliber ammunition; | |
| K: | 30 Rounds assorted 12 caliber ammunition; | |
| L: | 102 Rounds assorted 45 caliber ammunition; | |
| M: | 95 Rounds assorted 10 caliber ammunition; | |
| N: | 15 Rounds assorted 30-60 caliber ammunition; | |
| O: | 25 Rounds assorted 762 caliber ammunition; | |
| P: | 45 Rounds assorted 357 caliber ammunition; | |

each having been seized by law enforcement from Ray Ramos Jr. on or about March 29, 2019 in San Jose, California (hereinafter, "Defendant Property"), and each as a firearm or ammunition involved in a knowing violation of 18 U.S.C. § 922(g)(1), which prohibits possession of a firearm by a person who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year, and each as property constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of a violation of 21 U.S.C. §§ 841 and/or 846, or used or intended to be used to commit or to facilitate the commission of such a violation, and thereby forfeitable pursuant to 18 U.S.C. § 924(d)(1) and 21 U.S.C. § 881(a)(6).

## JURISDICTION AND VENUE

2. This Court has jurisdiction under 28 U.S.C. § 1355 and 21 U.S.C. § 881(a)(6).

3. Venue is proper in this district pursuant to 28 U.S.C. §§ 1355 and 1395 because the acts or omissions giving rise to the forfeiture occurred in this district and the Defendant Property is located in this district.

---

[1] This firearm was initially identified in ATF's notices of forfeiture as Springfield Armory, Geneseo IL unknown pistol caliber unknown bearing serial number S3768206.

VERIFIED COMPLAINT FOR FORFEITURE IN REM 2

4. Intra-district venue is proper in the San Jose Division within the Northern District of California.

## PARTIES

5. Plaintiff is the United States of America.

6. The Defendant Property consists of the following described property:

A: One (1) Mossberg 464 rifle, caliber 30-30, bearing serial number LA072616;
B: One (1) Ruger 10/22 rifle, caliber 22, bearing serial number 0009-16738;
C: One (1) Mossberg 500C shotgun, caliber 12, bearing serial number U396256;
D: One (1) Springfield Armory, Geneseo IL XDS pistol, caliber unknown, bearing serial number S3768206;[2]
E: One (1) Kimber Eclipse custom II pistol, caliber 10, bearing serial number KF44753;
F: One (1) Smith & Wesson M&P 9C pistol, caliber 9, bearing serial number HBA4965;
G: One (1) Smith & Wesson 622 pistol, caliber 22, bearing serial number TCW5780;
H: One (1) Smith & Wesson 627 V-Comp revolver, caliber 357, bearing serial number DDX0018;
I: One (1) Glock Inc. 17 pistol, caliber 9, bearing serial number KYB100;
J: 252 Rounds assorted caliber ammunition;
K: 30 Rounds assorted 12 caliber ammunition;
L: 102 Rounds assorted 45 caliber ammunition;
M: 95 Rounds assorted 10 caliber ammunition;
N: 15 Rounds assorted 30-60 caliber ammunition;
O: 25 Rounds assorted 762 caliber ammunition;
P: 45 Rounds assorted 357 caliber ammunition;

all having been seized by law enforcement officers from RAY RAMOS, JR. on or about March 29, 2019 in San Jose, California and currently in the custody of the ATF.

## FACTS

7. On March 14, 2019, Special Agent Lou Strickland with Homeland Security Investigations (HSI) received a call from Customs and Border Protection Officer (CBPO) Reyes from the San Francisco International Mail Facility, regarding an International mail package from China, identified as #LW124232316CN. The shipper listed on the package was Taozhengming, Room b312,

---

[2] This firearm was initially identified in ATF's notices of forfeiture as Springfield Armory, Geneseo IL unknown pistol caliber unknown bearing serial number S3768206.

VERIFIED COMPLAINT FOR FORFEITURE IN REM     3

3rd Floor of 34 building, Dahe industrial area, Huanguan south road, Guanlan Street, Shenzhen, Guangdong, 518131and the contents were declared as a "multi-tool switch." The package labeled #LW124232316 contained four "auto switch" devices, and was addressed to RAY RAMOS at the 1727 Cape Horn Place, San Jose, California 95133, with a phone number of (408) 775-2338.

8. "Auto switches" are conversion devices that have been designed and created for the sole purpose of converting semi-automatic Glock pistols into fully automatic machineguns. These devices vary by design and appearance but all, when properly installed on a semi-automatic Glock pistol, will allow the firearm to expel more than one projectile by a single pull of the trigger at approximately 1,200 rounds per minute. Installation of these conversion devices is fast and simple, requires no technical expertise, and is completed by removing the polymer slide cover plate on a Glock semi-automatic pistol and replacing it with a conversion device. These devices are referred to by different names, including but not limited to: "switches," "auto sears," "convertors," "conversion switches," "selector switches," "conversion devices," and "Fire Selector Systems for Glock" (FSSGs).

9. Auto switches are "machine guns" as defined in Title 26, United States Code, Section 5845. Specifically, Section 5845(b) provides:

> "The term 'machinegun' means any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person."

10. ATF considers auto switches to be machineguns. Apart from official military and law enforcement use, auto switches may only be lawfully possessed by licensed Federal Firearms Licensees (FFLs) who have paid the appropriate Special Occupational Tax (SOT) required of those manufacturing, importing, or dealing in National Firearms Act (NFA) weapons.

11. On February 18, 2019, during a previous investigation with similar circumstances,

VERIFIED COMPLAINT FOR FORFEITURE IN REM 4

Amanda Kimmel, a Paralegal for pistol manufacturer Glock Ges.m.b.H. (hereinafter "Glock"), stated that Glock does not manufacture auto switches. Ms. Kimmel also stated that Glock is aware of the selector switches offered for sale on sites such as Ebay and they work with Ebay to remove those ads as soon as the items are offered for sale. Ms. Kimmel also stated that Glock only produces one model capable of firing in full automatic mode; that model's selector switch is built as part of the pistol slide, and not as an additional part. She also stated the weapon is only sold directly to law enforcement agencies or branches of the U.S. Military and is a highly restricted item.

12. A query of international shipments destined for 1727 Cape Horn Place, San Jose, California revealed two additional packages that had been sent from the same shipper listed on the package which had been found to contain the auto switch. Both of the previous packages had been addressed to RAY RAMOS JR. at 1727 Cape Horn Place, San Jose, California. The first had been delivered on November 5, 2018, and the second had been delivered on December 3, 2018. Both packages had been declared to contain one "multitool switch" each.

13. SA Strickland conducted public records checks for the 1727 Cape Horn Place, San Jose, California, and learned that both RAY RAMOS JR. and Ray Ramos Sr. 09/01/1941) were listed as residing at the residence.

14. SA Strickland conducted a criminal history records check of both RAY RAMOS JR. and Ray Ramos Sr., and learned that RAMOS JR. has felony convictions in California for possession of a controlled substance, manufacture possible dangerous weapon, felon with a firearm and grand theft from a person, as well as misdemeanor convictions in California for battery, grand theft, domestic violence, and possession of controlled substance paraphernalia. As a convicted felon, RAMOS JR. is prohibited from possessing firearms or ammunition.

15. A firearms registration check for RAMOS JR. revealed no firearms registered to him.

16. A firearms registration check for Ramos Sr., revealed four rifles and three pistols

registered to him at 1727 Cape Horn Place, San Jose, California.

17. A records check with the ATF's Federal Firearms License (FFL) listing shows that neither RAMOS Sr. nor RAMOS JR. are licensed importers, licensed manufacturers, licensed dealers or licensed collectors of firearms.

18. Based upon the foregoing, HSI in San Jose decided to attempt controlled delivery of the package. In furtherance thereof, HSI applied for and received an anticipatory search warrant authorized by United States Magistrate Judge Susan Van Keulen, CR-19-70442 SVK.

19. On March 29, 2019, at approximately 11:59 a.m., United States Postal Service (USPS) Inspector Chung, posing as a mail delivery person, knocked on the front door of 1727 Cape Horn Place, San Jose, CA. RAMOS JR. answered the door. Inspector Chung stated that he had a package for "Ray Ramos" and RAMOS JR. stated that he was RAMOS. Inspector Chung handed RAMOS the package and RAMOS JR. signed a USPS slip acknowledging receipt.

20. After Inspector Chung was clear of the area, HSI knocked on the front door and announced their presence with a warrant. While they were knocking, RAMOS JR. answered the door with the package still in his hands. RAMOS JR. was handcuffed at that time and agents entered the residence to perform the search. RAMOS JR.' minor (toddler age) son was found asleep on the living room couch. RAMOS JR.'s wife, Anggelyn Ramos, was initially not present but returned home while agents were executing the search warrant.

21. While the warrant was being executed, HSI SA's interviewed RAMOS JR. in an upstairs bedroom. They read RAMOS JR. his *Miranda* warnings, and RAMOS stated he understood his rights and agreed to waive his rights and answer questions, but refused to sign the waiver. They explained to RAMOS JR. that they had a search warrant for his residence, and asked RAMOS JR. if he knew why they were there. RAMOS JR. asked if it "was for the guns." When asked what he meant, RAMOS JR. stated that he knew "their lingo," referring to agents who were overheard stating they found an "SBR" in

the garage. RAMOS JR. stated that anything they found in the house was his, "whatever it is, it's all mine."

22. The agents explained to RAMOS JR. that they executed the search warrant after a controlled delivery of what was intended to be Glock auto switch devices, which are considered a prohibited item under the National Firearms Act (NFA), 26 U.S.C. § 5845(a), as "any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun." RAMOS JR. stated that he had ordered four (4) switches from Wish.com but had not received any yet, and that he had one switch on a Glock Airsoft Pistol but that Airsoft pistol had been given to him.

23. When asked what agents would find in the residence, RAMOS JR. stated that there was an "AR" under the bed, a few pistols in his room, an "AR" in the garage, and an M&P that belonged to his wife in the safe. They asked RAMOS JR. if they would find anything else in the house, and RAMOS JR. stated no. RAMOS then asked for a lawyer and questioning ceased.

24. The residence had an attached garage, which was also searched pursuant to the warrant. In one corner of the garage agents discovered what appeared to be a drug packaging operation. The area contained two tables (one black, one brown) that had been set up at a 90 degree angle to one another so as to create a desk-like area. On both tables and on items on the tables (for example, an ashtray, a computer, a folded playing card, a clear Plexiglas tray, and a mouse pad) agents observed notable amounts of what appeared to be cocaine residue. A pair of children's slippers were observed on the black table amidst the cocaine residue. The white residue was notable against the brown and black surfaces of the tables and was readily visible to anybody present in the garage.

25. Immediately to the right of the brown table agents located a "quick release" safe (a safe with a spring loaded door that can be opened with the press of a few buttons and springs open quickly), inside of which agents located Item E – the Kimber Eclipse custom II pistol. Attached to the side of the

safe was a small, black zippered pouch containing a number of small, clear zip-top baggies containing what appeared to be cocaine. Behind the safe agents located a loaded AR-15 short-barrel rifle. Also behind the safe agents located a backpack that held a sandwich bag containing approximately 248 grams of cocaine, smaller black and white zip top plastic baggies, a folded playing card with cocaine residue, a feeding spoon for a baby with cocaine residue, a digital scale with cocaine residue, and a loaded (with an additional round in the chamber) Springfield, Model XDS, 9mm Pistol with two additional loaded magazines (Item D).

26. To the right of the brown desk, in a black cabinet, agents located a Mossberg 500 shotgun (Item C).

27. A short distance from the quick release safe agents located another safe, which was found to contain a money counter, empty magazines, a "jig" (used in the manufacturing process of AR-15s), additional amounts of cocaine, and a partially manufactured component of an AR-15(called a "lower".

28. To the left of the quick release safe, attached via a magnet to the brown table, agents recovered a butterfly knife.

29. Agents also recovered additional evidence of gun and ammunition manufacturing in the garage, including a reloading machine (which is used to manufacture bullets from new or spent casings).

30. The area also contained multiple video monitors which were connected to a video surveillance system of the house. The monitors allowed RAMOS JR. to work at the tables in the garage and still be able to observe what was going on in and around the house.

31. SA Strickland has been a special agent with the Department of Homeland Security, Homeland Security Investigations, for approximately sixteen years. He successfully completed a twelve week Criminal Investigator Training Program (CITP) located at the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia, and an additional eight week Immigration and Customs Enforcement Special Agent Training (ICESAT) Academy. As part of the training at FLETC, he

received extensive instruction in the areas of Immigration law, Customs law, Criminal law, firearms training, rules of evidence, and interview techniques. His law enforcement experience includes conducting physical surveillance, interviewing witnesses, victims and suspects, writing affidavits for and executing search warrants, handling confidential informants, analyzing phone records obtained from subpoenas, search warrants, pen registers, trap and trace devices, and collecting and processing evidence. Based upon his training and experience, SA Strickland knows 248 grams of cocaine is an amount presumptively possessed for distribution. This conclusion is reinforced by the fact that the cocaine was found in the same backpack with a loaded firearm, a digital scale bearing cocaine residue, packaging equipment bearing cocaine residue, and packaging materials.

32. In his training and experience, SA Strickland also knows that narcotics traffickers frequently possess weapons, including pistols, short-barrel shotguns, assault-type rifles, and other firearms, and these weapons are commonly used by drug dealers as an item of investment, as "currency" to exchange for or receive as payment for drugs, to protect themselves from robbery, and to protect themselves from arrest by law enforcement officers. RAMOS JR.'s possession of the Springfield XDS 9mm Pistol and additional loaded magazines (Item D) in the same backpack in which he kept a distribution amount of cocaine was consistent with SA Strickland's experience in this regard, as was the fact that RAMOS JR. kept additional firearms (Item C and Item E) in close proximity to the makeshift desk which (given the large amount of cocaine residue on its surface) he appears to have used to package cocaine.

33. A few minutes later RAMOS JR. indicated to an ATF agent that he wished to speak to agents again. The agents believe RAMOS JR.'s decision was spurred by their discovery in the garage of the backpack containing cocaine and a loaded 9mm pistol. RAMOS JR. asked, "[i]f I just tell you everything will this go faster?" RAMOS JR. was re-*Mirandized* and, after noting what they had found in the backpack, the agents asked RAMOS JR. what else they would find in the house. RAMOS JR.

VERIFIED COMPLAINT FOR FORFEITURE IN REM                                      9

stated they would find the following: two (2) "ARs" in the garage; one (1) gun in the combo safe; one (1) gun in the backpack; two (2) "ARs" under the bed upstairs; a toy Glock in the garage; cocaine in the backpack; and a scale.

34. When asked about the cocaine, RAMOS JR. stated that it is for personal use and that he used it daily. Based upon the clear evidence of drug trafficking agents had recovered in the garage and in the backpack (including the scale, smaller baggies, and baby spoon with cocaine residue that indicated it had been used to scoop cocaine from the larger sandwich bag into smaller baggies), the agents concluded RAMOS JR. was not being honest. RAMOS JR. stated that he was a felon and that he knew he was not allowed to have firearms. RAMOS JR. stated that he purchased most things online and just assumed he would not get in trouble if they sold it to him. He stated he bought the short-barreled rifle online as well. RAMOS JR. stated that he and his father would build the "ARs" together, and that it was something they could bond over.

35. The search resulted in the discovery and seizure of the Defendant Property[3], as follows:

- A: One (1) Mossberg 464 rifle caliber 30-30 bearing serial number LA072616 (found in RAMOS JR.'S bedroom);
- B: One (1) Ruger 10/22 rifle caliber 22 bearing serial number 0009-16738 (found in RAMOS JR.'S bedroom);
- C: One (1) Mossberg 500C shotgun caliber 12 bearing serial number U396256 (found in the garage);
- D: One (1) Springfield Armory, Geneseo IL XDS pistol caliber unknown bearing serial number S3768206 (found in the garage);[4]
- E: One (1) Kimber Eclipse custom II pistol caliber 10 bearing serial number KF44753 (found in the garage);
- F: One (1) Smith & Wesson M&P 9C pistol caliber 9 bearing serial number HBA4965 (found in RAMOS JR.'S bedroom);
- G: One (1) Smith & Wesson 622 pistol caliber 22 bearing serial number TCW5780 (found in RAMOS JR.'S bedroom);

---

[3] In addition to the Defendant Property, the agents seized several additional firearms which were are not included in this Verified Complaint. Investigation of some of those firearms confirmed they were registered to Ramos Sr. and were located within his gun safe at the time of the search. Other firearms were forfeited administratively after no claims were filed for their return. Accordingly, the government is not seeking forfeiture of those firearms.

[4] This firearm was initially identified in ATF's notices of forfeiture as Springfield Armory, Geneseo IL unknown pistol caliber unknown bearing serial number S3768206.

VERIFIED COMPLAINT FOR FORFEITURE IN REM        10

H:   One (1) Smith & Wesson 627 V-Comp revolver caliber 357 bearing serial number DDX0018 (found in RAMOS JR.'S bedroom);
I:   One (1) Glock Inc. 17 pistol Cal: 9 bearing serial number KYB100 (found in RAMOS JR.'S bedroom);
J:   252 Rounds assorted caliber ammunition;
K:   30 Rounds assorted 12 caliber ammunition;
L:   102 Rounds assorted 45 caliber ammunition;
M:   95 Rounds assorted 10 caliber ammunition;
N:   15 Rounds assorted 30-60 caliber ammunition;
O:   25 Rounds assorted 762 caliber ammunition;
P:   45 Rounds assorted 357 caliber ammunition;

36. On March 29, 2019, RAMOS JR.'s wife, Anggelyn Ramos, was interviewed by HSI agents at the residence (1727 Cape Horn Place, San Jose, CA). She stated both she and her husband (RAMOS JR.) own guns and they were all located in their bedroom upstairs. She stated that her father-in-law (Ramos Sr.) also owns guns, which were locked in his bedroom safe. She also stated that both she and her husband know the combination to her father in law's gun safe.

37. Ms. Ramos stated that she knew her husband (RAMOS JR.) should not possess any weapons or weapons-related items because he is a felon.

38. Ms. Ramon stated that her husband (RAMOS JR.) always used the garage area to work. She also stated that RAMOS JR. was unemployed and had last worked for Safeway.

39. When the agents admonished Ms. Ramos that they had found unsecured guns in the garage and in the bedroom she shared with RAMOS JR., which was unsafe especially around children, Ms. Ramos acknowledged the guns had not been kept safely and began to cry.

40. On April 1, 2019, RAMOS JR. was charged by complaint in the Northern District of California with Possession of Cocaine with Intent to Distribute in violation of 21 U.S.C. § 841(a)(1). CR-19-70491 MAG.

41. On April 17, 2019, RAMOS JR. waived indictment and on April 22, 2019, RAMOS JR. was charged in a felony information in the Northern District of California with one count of Possession of Cocaine with Intent to Distribute in violation of 21 U.S.C. § 841(a)(1). CR-19-00187 EJD.

VERIFIED COMPLAINT FOR FORFEITURE IN REM                                                                 11

42. ATF subsequently commenced administrative forfeiture proceedings of the Defendant Property. Notice of seizure and intent to forfeit was sent to all known potential claimants on May 3, 2019 (including Ray Ramos, Sr., and Anggelyn Ramos), and was made by publication for thirty consecutive days beginning on May 6, 2019. Ray Ramos, Sr. filed a claim seeking return of the Defendant Property on May 22, 2019.

**CLAIM FOR RELIEF**

43. The United States incorporates by reference the allegations in paragraphs 1 through 41 as though fully set forth herein.

44. Title 18, United States Code, Section 922(g)(1) makes it "unlawful for any person ... who has been convicted in any court of ... a crime punishable by imprisonment for a term exceeding one year…to…possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

45. Title 18, United States Code, Section 924(d)(1) specifies that any firearm and ammunition involved or used in any knowing violation of 18 U.S.C. § 922(g)(1) shall be subject to seizure and forfeiture.

46. Title 21, United States Code, Section 841(a) prohibits the manufacture, distribution, or dispensing, and possession with the intent to distribute a controlled substance.

47. Title 21, United States Code, Section 881(a)(6), provides, in part, for the forfeiture of all moneys, securities or other things of value furnished or intended to be furnished to a person in exchange for a controlled substance, all proceeds traceable to such an exchange, and all moneys and securities used or intended to be used to facilitate any violation of Title 21, United States Code, Chapter 13, Subchapter I, including violations of Title 21, United States Code, Sections 841(a) and 846.

48. In light of the foregoing, and considering the totality of the circumstances, there is probable cause to believe that the Defendant Property represents proceeds traceable to money, securities or other things of value furnished to a person in exchange for a controlled substance, and/or was used or

intended to be used to facilitate the transportation, sale, receipt, possession, or concealment of controlled substances or proceeds traceable to controlled substances, in violation of Title 21, United States Code, Sections 841(a) and 846, and thus subject to forfeiture under Title 21, United States Code, Sections 881(a)(6) and (a)(11).

49.  In light of the foregoing, and considering the totality of the circumstances, there is also probable cause to believe that the Defendant Property was involved in a knowing violation of Title 18, United States Code, Section 922(g)(1), and thus subject to forfeiture under Title 18, United States Code, Section § 924(d)(1).

WHEREFORE, plaintiff United States of America requests that due process issue to enforce the forfeiture of the Defendant Property; that notice be given to all interested parties to appear and show cause why forfeiture should not be decreed; and that judgment of forfeiture be entered; that the Court enter judgment forfeiting the Defendant Property; and that the United States be awarded such other relief as may be proper and just.

DATED: 8/20/19

Respectfully submitted,

DAVID L. ANDERSON
United States Attorney

KAREN BEAUSEY
Assistant United States Attorney

VERIFIED COMPLAINT FOR FORFEITURE IN REM                                                                 13

## **VERIFICATION**

I, Special Agent Lou Strickland, state as follows:

1. I am a Special Agent with the Department of Homeland Security, Homeland Security Investigations. I am a case agent assigned to this case. As such, I am familiar with the facts and the investigation leading to the filing of this Complaint for Forfeiture.

2. I have read the Complaint and believe the allegations contained therein to be true.

\* \* \* \* \*

I declare under penalty of perjury that the foregoing is true and correct. Executed this 20 day of August, 2019, in SAN JOSE, California.

/s/ Lou Strickland
SA Lou Strickland
Homeland Security Investigations

The JS-CAND 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved in its original form by the Judicial Conference of the United States in September 1974, is required for the Clerk of Court to initiate the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
UNITED STATES OF AMERICA

**(b)** County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
AUSA KAREN BEAUSEY
450 GOLDEN GATE AVE., 9TH FLOOR
SAN FRANCISCO, CA 94102

## DEFENDANTS
VARIOUS FIREARMS

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

[X] 1  U.S. Government Plaintiff
[ ] 2  U.S. Government Defendant
[ ] 3  Federal Question *(U.S. Government Not a Party)*
[ ] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | 1 | 1 | Incorporated or Principal Place of Business In This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated and Principal Place of Business In Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

**CONTRACT**
- 110 Insurance
- 120 Marine
- 130 Miller Act
- 140 Negotiable Instrument
- 150 Recovery of Overpayment Of Veteran's Benefits
- 151 Medicare Act
- 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- 153 Recovery of Overpayment of Veteran's Benefits
- 160 Stockholders' Suits
- 190 Other Contract
- 195 Contract Product Liability
- 196 Franchise

**REAL PROPERTY**
- 210 Land Condemnation
- 220 Foreclosure
- 230 Rent Lease & Ejectment
- 240 Torts to Land
- 245 Tort Product Liability
- 290 All Other Real Property

**TORTS**

*PERSONAL INJURY*
- 310 Airplane
- 315 Airplane Product Liability
- 320 Assault, Libel & Slander
- 330 Federal Employers' Liability
- 340 Marine
- 345 Marine Product Liability
- 350 Motor Vehicle
- 355 Motor Vehicle Product Liability
- 360 Other Personal Injury
- 362 Personal Injury -Medical Malpractice

*CIVIL RIGHTS*
- 440 Other Civil Rights
- 441 Voting
- 442 Employment
- 443 Housing/ Accommodations
- 445 Amer. w/Disabilities–Employment
- 446 Amer. w/Disabilities–Other
- 448 Education

*PERSONAL INJURY*
- 365 Personal Injury – Product Liability
- 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- 368 Asbestos Personal Injury Product Liability

*PERSONAL PROPERTY*
- 370 Other Fraud
- 371 Truth in Lending
- 380 Other Personal Property Damage
- 385 Property Damage Product Liability

*PRISONER PETITIONS*

*HABEAS CORPUS*
- 463 Alien Detainee
- 510 Motions to Vacate Sentence
- 530 General
- 535 Death Penalty

*OTHER*
- 540 Mandamus & Other
- 550 Civil Rights
- 555 Prison Condition
- 560 Civil Detainee– Conditions of Confinement

**FORFEITURE/PENALTY**
- [X] 625 Drug Related Seizure of Property 21 USC § 881
- 690 Other

**LABOR**
- 710 Fair Labor Standards Act
- 720 Labor/Management Relations
- 740 Railway Labor Act
- 751 Family and Medical Leave Act
- 790 Other Labor Litigation
- 791 Employee Retirement Income Security Act

**IMMIGRATION**
- 462 Naturalization Application
- 465 Other Immigration Actions

**BANKRUPTCY**
- 422 Appeal 28 USC § 158
- 423 Withdrawal 28 USC § 157

**PROPERTY RIGHTS**
- 820 Copyrights
- 830 Patent
- 835 Patent–Abbreviated New Drug Application
- 840 Trademark

**SOCIAL SECURITY**
- 861 HIA (1395ff)
- 862 Black Lung (923)
- 863 DIWC/DIWW (405(g))
- 864 SSID Title XVI
- 865 RSI (405(g))

**FEDERAL TAX SUITS**
- 870 Taxes (U.S. Plaintiff or Defendant)
- 871 IRS–Third Party 26 USC § 7609

**OTHER STATUTES**
- 375 False Claims Act
- 376 Qui Tam (31 USC § 3729(a))
- 400 State Reapportionment
- 410 Antitrust
- 430 Banks and Banking
- 450 Commerce
- 460 Deportation
- 470 Racketeer Influenced & Corrupt Organizations
- 480 Consumer Credit
- 485 Telephone Consumer Protection Act
- 490 Cable/Sat TV
- 850 Securities/Commodities/ Exchange
- 890 Other Statutory Actions
- 891 Agricultural Acts
- 893 Environmental Matters
- 895 Freedom of Information Act
- 896 Arbitration
- 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

[X] 1 Original Proceeding
[ ] 2 Removed from State Court
[ ] 3 Remanded from Appellate Court
[ ] 4 Reinstated or Reopened
[ ] 5 Transferred from Another District *(specify)*
[ ] 6 Multidistrict Litigation–Transfer
[ ] 8 Multidistrict Litigation–Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Title 18, United States Code, Section 924(d)(1) and Title 21, United States Code, Section 881(a)(6)
Brief description of cause:
Drug Related Forfeiture

## VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, Fed. R. Civ. P.    DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND:   [ ] Yes   [X] No

## VIII. RELATED CASE(S), IF ANY *(See instructions)*:
JUDGE                DOCKET NUMBER

## IX. DIVISIONAL ASSIGNMENT (Civil Local Rule 3-2)
*(Place an "X" in One Box Only)*   [X] SAN FRANCISCO/OAKLAND   [ ] SAN JOSE   [ ] EUREKA-MCKINLEYVILLE

DATE 08/20/2019    SIGNATURE OF ATTORNEY OF RECORD  */s/ Karen Beausey*